*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVIN J. ANDERSON, | ) | |
| | ) | Supreme Court No. S-17077 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-05945 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA HOUSING FINANCE | ) | |
| CORPORATION, | ) | No. 7440 – April 17, 2020 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, for Appellant. Laura Fox and Stefan Saldanha, Assistant Attorneys General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.
STOWERS, Justice, dissenting.

## I.     INTRODUCTION

Alaska Housing Finance Corporation (AHFC), a public corporation, held a promissory note and deed of trust executed in connection with a borrower's purchase

of his home. AHFC non-judicially foreclosed on the deed of trust without first providing the borrower an opportunity to present to a decision-maker his argument why under AHFC's policies and procedures he was entitled to loan assistance to prevent the foreclosure. The borrower brought suit, alleging, among other things, that he was denied procedural due process protections before AHFC took his property by foreclosure. The superior court rejected his due process argument and granted AHFC summary judgment on all issues. The sole issue on appeal is the due process question. We conclude that AHFC is a "state actor," that the foreclosure effected a deprivation of the borrower's property, and that the borrower was not afforded a constitutionally required pre-deprivation opportunity to be heard. We therefore reverse the superior court's summary judgment decision on the due process question and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    AHFC's History And Lending Activities

AHFC is "a public corporation organized within the Alaska Department of Revenue."[1] Although AHFC has "a legal existence independent of and separate from the [S]tate,"[2] in practice it is state-controlled and enjoys benefits associated with being a state entity. AHFC's board of directors is comprised of seven members; all are state agency commissioners or otherwise appointed by the governor.[3] AHFC is represented by the

---

[1]    *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 258 (Alaska 2000); *see* AS 18.56.020.

[2]    AS 18.56.020.

[3]    AS 18.56.030(a).

Attorney General in legal matters[4] and enjoys the State's sovereign immunity from lawsuits.[5]

The legislature created AHFC to address the shortage of residential housing available to low- and middle-income Alaskans and to promote the development of the State's "remote, underdeveloped, or blighted areas."[6] AHFC "is empowered to act on behalf of the [S]tate and its people in serving [AHFC's] public purpose."[7] Part of AHFC's public purpose is encouraging private lending to low- and middle-income borrowers by purchasing mortgage loans on the secondary market.[8]

AHFC contracts with lenders to service its loan portfolio. AHFC requires its servicers to "establish a system for servicing delinquent loans that follows the accepted standards of prudent lending." AHFC's servicing guide provides that a servicer may be required to repurchase a loan if it fails to adequately service the loan. AHFC's servicing guide also calls for compliance with "requirements of the insurer or guarantor" to assure mortgage insurance proceeds. AHFC must approve all loan modifications and mortgage foreclosures.

**B.     Anderson Purchases A Residence Financed By A Promissory Note Secured By A Deed Of Trust**

In September 2006 Davin Anderson borrowed $90,950 from Wells Fargo Bank, N.A. to purchase a residential property. Anderson executed a 30-year promissory note at a 5.75% annual interest rate. The note was secured by a deed of trust covering

---

[4]     AS 18.56.055.

[5]     *See Guerrero*, 6 P.3d at 259.

[6]     AS 18.56.010(a), (c).

[7]     AS 18.56.010(c).

[8]     *See* AS 18.56.010(c), (e).

the property.[9]  A rider to the deed of trust contemplated that Wells Fargo might assign the note and deed of trust to AHFC.

The deed of trust described the note holder's remedies if Anderson defaulted on payment.  The deed of trust permitted the note holder to accelerate the debt and to exercise a power of sale to non-judicially foreclose on the property.[10]  The deed of trust required that prior to acceleration the note holder give Anderson notice specifying:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date [of the notice], by which the default must be cured; and (d) that failure to cure the default on or before the date specified . . . may result in acceleration of the sums secured by [the deed of trust] and sale of the [p]roperty.[11]

The deed of trust required that prior to the trustee exercising power of sale it "execute a written notice of the occurrence of an event of default and of the election to cause the [p]roperty to be sold and . . . record such notice in [the] Recording District in which . . . the [p]roperty is located."[12]  The trustee also was required to mail or personally deliver

---

**9**　　*See* AS 34.20.110 (providing that "a deed of trust, given to secure an indebtedness, shall be treated as a mortgage of real estate"); *Young v. Embley*, 143 P.3d 936, 940-42 (Alaska 2006) (describing deed of trust as form of mortgage creating lien on real property without moving title from trustee).

**10**　　*See* AS 34.20.070 (providing that power of sale in deed of trust authorizes trustee to foreclose and sell property upon default and specifying procedures for non-judicial deed of trust foreclosure).

**11**　　*See* AS 34.20.070(b) (outlining requirements for default notice).

**12**　　*See id.* (requiring that default notice be recorded).

notice to anyone holding an interest in the property.[13] Following the required notice period, the trustee was allowed to "sell the [p]roperty at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale."[14] The deed of trust provided that Anderson could halt the foreclosure process and reinstate the note if he made all past-due payments and cured any other defaults under the agreement.[15]

Shortly after the secured loan was originated, Wells Fargo sold and assigned both the note and deed of trust to AHFC. AHFC retained Wells Fargo to service the loan.

### C. Anderson Defaults And Seeks A Modification

Anderson later began having financial difficulties. He declared bankruptcy in 2010 and discharged his personal obligation on the note. In 2013 Anderson fell behind on his payments and Wells Fargo placed the loan in "loss mitigation status." Anderson and Wells Fargo corresponded several times in 2014 about possible loan modification options. Wells Fargo notified Anderson in December that AHFC had rejected a proposed modification.

Anderson then tried to communicate directly with AHFC. Anderson wrote AHFC in January 2015 asking for help refinancing or modifying his loan to make it affordable. AHFC forwarded the letter to Wells Fargo. In March Anderson emailed AHFC a proposed payment schedule. Wells Fargo requested updated financial

---

[13] *See* AS 34.20.070(c) (directing service by mail or in person to specified parties with interest in property).

[14] *See* AS 34.20.080(a) ("The sale authorized in AS 34.20.070 shall be made under the terms and conditions and in the manner set out in the deed of trust.").

[15] *See* AS 34.20.070(e)(1) (providing conditions for curing default and terminating sale, including payment of past-due sums and foreclosure costs incurred).

information to determine if Anderson qualified for a repayment plan. Anderson did not respond for several months, and AHFC instructed Wells Fargo to proceed with foreclosure. The foreclosure sale was scheduled for September.

In August Anderson called Wells Fargo to determine how he could stop the foreclosure sale. Wells Fargo told him he would need to pay $14,195, which included all past-due payments and foreclosure-related expenses.[16] Anderson submitted the payment and his loan was reinstated.

Anderson soon defaulted again; his last payment was in December 2015. He sent AHFC a letter in March 2016 seeking an interest rate reduction. AHFC forwarded the letter to Wells Fargo. Wells Fargo mailed Anderson a "[l]oss [m]itigation package" and followed up with several phone calls. By May Anderson had not responded, and Wells Fargo recommended that AHFC again begin the foreclosure process. AHFC approved foreclosure.

## D. AHFC Directs Foreclosure Pursuant To The Power Of Sale

The second non-judicial foreclosure process under Anderson's deed of trust began in June 2016; a foreclosure sale was scheduled for September. The trustee recorded a notice of default describing the property, the amount owed, and how the loan could be reinstated. The notice was posted in three public buildings near the property; published online and in a newspaper; posted at a conspicuous place on Anderson's

---

[16] *See id.*

property; and mailed to him.[17]  The notice mailed to Anderson also included disclosures implicated by the federal Fair Debt Collection Practices Act,[18] including the following:

> Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid. . . . If you notify us in writing within 30 days after receipt of this notice that you dispute the debt or any part of it, we will obtain verification of the debt and mail it to you.

The foreclosure sale was postponed several times;[19] it ultimately took place in August 2017.  AHFC was the highest bidder at the sale and the trustee conveyed the property to it shortly thereafter.[20]

### E.        Anderson Unsuccessfully Sues; Anderson Appeals

In April 2017, a few months before the foreclosure sale, Anderson sued AHFC and Wells Fargo to enjoin the sale and recover damages related to Wells Fargo's alleged misrepresentations.  Wells Fargo later settled with Anderson, leaving Anderson's claim that AHFC had failed to afford him due process because it had not provided him a pre-foreclosure opportunity to be heard.  Anderson apparently did not seek a temporary

---

[17]     *See* AS 34.20.080(a)(2) (requiring sales under AS 34.20.070 to be conducted after public notice as provided in AS 09.35.140); AS 09.35.140(a)-(b) (describing methods by which notice of sale shall be given prior to sale of property on execution and requiring posting notice in public place near property, publishing notice in newspaper, and publishing notice on internet).

[18]     *See* 15 U.S.C. § 1692g(a) (2012) (requiring debt collector to provide written notice including specified information within five days of initial communication of intent to collect on debt).

[19]     *See* AS 34.20.080(e) (providing procedures for postponing sale).

[20]     *See* AS 34.20.080(b) ("Sale shall be made to the highest and best bidder. The beneficiary under the trust deed may bid . . . [and] the trustee shall execute and deliver to the purchaser a deed to the property sold.").

injunction, and his suit thus did not halt the foreclosure sale. Following the sale AHFC brought a counterclaim to recover possession of the property and damages.[21]

Anderson sought summary judgment on his due process claim. AHFC opposed that motion and sought summary judgment on all other issues, arguing that Anderson received sufficient due process and that his other claims were barred by statute or AHFC's sovereign immunity. The superior court heard oral argument on the cross-motions. The court then denied Anderson's motion and granted AHFC's, without providing specific reasoning, but stating that Anderson should appeal to the supreme court for a ruling on his due process claim.

After the summary judgment ruling, the parties engaged with the superior court for entry of final judgment. As part of the final judgment, Anderson was ordered to pay AHFC damages for his post-foreclosure possession of his residence. The parties then stipulated to a stay of execution and to Anderson's continued possession of the residence at a specified monthly rate pending Anderson's appeal to the supreme court. AHFC subsequently obtained an attorney's fees award against Anderson under Alaska Civil Rule 82(b)(3) in the amount of $7,190.[22]

Anderson appeals the ruling rejecting his due process claim.

---

[21] *See* AS 09.45.630 (allowing person entitled to property to seek possessive recovery).

[22] *See generally* Alaska R. Civ. P. 82(a)-(b) (regarding attorney's fees awards to prevailing parties).

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo";[23] we also "review constitutional questions, including due process [questions], de novo,"[24] and we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[25]

## IV. DISCUSSION

The Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[26] A due process claimant must prove the existence of "state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection."[27] We first analyze whether Anderson has demonstrated the existence of state action and a sufficient property interest to warrant constitutional protection. Concluding that he has, we then examine whether he received a constitutionally sufficient pre-deprivation opportunity to be heard.

### A. AHFC Is A Government Actor For Due Process Purposes.

AHFC seemingly contends in its brief that we should not find "state action" for purposes of a constitutional claim when the State enforces its rights under a contract. But AHFC also appears to concede that it is a state actor and that Anderson has due process rights in this case's context. We conclude that AHFC is an agency of the State for purposes of constitutional obligations under the U.S. Supreme Court's test set out in

---

[23]  *Blair v. Fed. Ins. Co.*, 433 P.3d 1048, 1051 (Alaska 2018).

[24]  *Dennis O. v. Stephanie O.*, 393 P.3d 401, 405 (Alaska 2017).

[25]  *Id.* at 405-06 (quoting *Jerry B. v. Sally B.*, 377 P.3d 916, 924-25 (Alaska 2016)).

[26]  Alaska Const. art. I, § 7.

[27]  *Dennis O.*, 393 P.3d at 406 (quoting *Ostrow v. Higgins*, 722 P.2d 936, 942 (Alaska 1986)).

*Lebron v. National Railroad Passenger Corp.*,[28] which we followed in *Laverty v. Alaska Railroad Corp.*[29]

In considering whether an entity is subject to the federal due process clause, federal courts appear to first ask whether the entity is part of the government, and then, if it is not, whether the entity's actions nevertheless constituted government action.[30] The U.S. Supreme Court formulated a two-part test in *Lebron* for determining whether a nominally private entity is itself the government, holding:

> [A] corporation is an agency of the Government, for purposes of the constitutional obligations of Government rather than the "privileges of the government," when the State has specifically created that corporation for the furtherance of governmental objectives, and not merely holds some shares but controls the operation of the corporation through its appointees.[31]

---

[28]     513 U.S. 374, 399 (1995).

[29]     13 P.3d 725, 731 (Alaska 2000).

[30]     *See, e.g.*, *Sprauve v. W. Indian Co.*, 799 F.3d 226, 229 (3d Cir. 2015) (describing tests to determine whether private action should be considered state action and noting that "we may avoid this determination of whether private party conduct constitutes state action when the actor is the government"); *see also* Ronald J. Krotoszynski, Jr., *Back to the Briarpatch: An Argument in Favor of Constitutional Meta-Analysis in State Action Determinations*, 94 MICH. L. REV. 302, 314 (1995) ("[T]he first-level inquiry in any state action case arising post-Lebron will be whether the defendant is the government itself. If the defendant is a governmental officer, agency, or instrumentality, the state action inquiry is at an end: state action is present.").

[31]     *Lebron*, 513 U.S. at 399.

The Court used that test to conclude that Amtrak was part of the federal government and therefore subject to First Amendment restrictions imposed on the government.[32] The Court first noted that "Amtrak was created by a special statute, explicitly for the furtherance of federal governmental goals."[33] The Court then concluded that the federal government controlled Amtrak because the government retained the "permanent authority" to appoint six of Amtrak's eight directors.[34]

We looked to *Lebron* for guidance in *Laverty v. Alaska Railroad Corp.*[35] Alaska Railroad Corporation argued that its lands were not state lands subject to the Alaska Constitution's Public Notice Clause.[36] We rejected Alaska Railroad's argument, comparing its creation and governance structure to Amtrak's.[37] Like Amtrak, Alaska Railroad was created by special statutes to carry out the "essential government function" of operating a railroad, and eight of Alaska Railroad's nine board members were politically appointed.[38] And we concluded our discussion of *Lebron* by reviewing other Alaska cases involving public corporations and noting that "[o]ur precedent . . . fits into the *Lebron* framework: public corporations, particularly those significantly controlled

---

[32]     *Id.* at 399.

[33]     *Id.* at 397.

[34]     *Id.* at 396, 399.

[35]     13 P.3d 725, 731 (Alaska 2000).

[36]     *Id.*

[37]     *Id.* at 732.

[38]     *Id.* (quoting AS 42.40.010).

by the state, must meet constitutional mandates, but may be regulated by statute separately from other government entities."[39]

AHFC is a state actor under *Lebron* and *Laverty*. First, AHFC was "specifically created [by the legislature] for the furtherance of governmental objectives."[40] AHFC was created in 1971 to address the shortage of residential housing available to low- and middle-income Alaskans and to promote development in "remote, underdeveloped, or blighted areas" within the state.[41] The legislature expressly acknowledged when creating AHFC that the private market had been unable to provide "an adequate supply of safe and sanitary homes at prices or rents that persons of lower or moderate income c[ould] afford."[42]

Second, AHFC is wholly controlled by the State through its appointees.[43] All seven members of AHFC's board are government officials or appointed by the governor.[44] The State has more control over AHFC than it had in *Laverty* over Alaska Railroad, with eight of Alaska Railroad's nine board members being political appointees,[45] and than the federal government had over Amtrak in *Lebron*, with six of

---

[39]    *Id.* at 734.

[40]    *See Lebron*, 513 U.S. at 399; *Laverty*, 13 P.3d at 731-32.

[41]    Ch. 107, § 1, SLA 1971; AS 18.56.010(a), (c).

[42]    AS 18.56.010(b).

[43]    *See Lebron*, 513 U.S. at 399; *Laverty*, 13 P.3d at 731-32.

[44]    AS 18.56.030(a).

[45]    *See Laverty*, 13 P.3d 725, 732.

Amtrak's eight directors being governmentally appointed.[46]  Because the State created AHFC in furtherance of government objectives and exercises control over it through government appointees, it is, "by its very nature, what the Constitution regards as the government."[47] As a government entity, AHFC must satisfy restrictions imposed on state action by the Alaska Constitution, including its Due Process Clause.

**B.     Anderson Has A Constitutionally Protected Property Interest In His Home And Did Not Waive Due Process Rights.**

       **1.     Mortgagors facing state-sponsored non-judicial deed of trust foreclosures have constitutionally protected property interests in their homes.[48]**

Anderson contends that he has a constitutionally protected property interest in his home because "[o]wnership of real property is one of the quintessential forms of property protected by due process."  Anderson is correct that his interest in his home is a sufficient property interest to invoke due process protections in the face of state action. In *Fuentes v. Shevin* the U.S. Supreme Court held that debtors who had made

---

[46]     *See Lebron*, 513 U.S. at 397.

[47]     *Lebron*, 513 U.S. at 392; *see also Laverty*, 13 P.3d 725, 733.

[48]     We previously noted in dicta that most courts considering the issue have held that non-judicial foreclosure proceedings brought by private parties typically do not give rise to state action for purposes of constitutional due process. *Ostrow v. Higgins*, 722 P.2d 936, 942 & n.9 (Alaska 1986).  We have not decided that precise issue, and we need not decide it here absent briefing; this case, unlike those cited in *Ostrow*, involves state-sponsored foreclosure.  *But see Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741-43 (6th Cir. 2015) (declining to rule on state-action issue but holding Michigan non-judicial foreclosure statute providing (1) pre-foreclosure notice including that borrower "has 30 days to request a meeting to attempt to work out a loan modification," and (2) post-foreclosure redemption period during which borrower may take legal action, satisfied federal due process concerns); *cf. id.* at 744 (concurring opinion) (concluding that because agency was not state actor, plaintiff's due process claims failed without regard to Michigan's non-judicial foreclosure statute).

"substantial installment payments" under conditional sales contracts for household goods had a property interest protected by the federal due process clause.[49] If a property interest in a stove or stereo can trigger due process protections, surely an interest in real property can as well.[50]

AHFC appears to argue that we should not find a deprivation of property because foreclosure was the agreed-upon contractual remedy, citing federal cases holding that a plaintiff had failed to state either (1) a takings claim because a government actor's breach of contract did not constitute a "taking,"[51] or (2) a procedural due process claim because a breach of contract did not rise to the level of a "constitutional deprivation" of property.[52] But AHFC does not attempt to reconcile these cases with cases in which federal courts have found a due process violation due to breach of an

---

[49] *See Fuentes v. Shevin*, 407 U.S. 67, 86-87 (1972) ("Clearly, their possessory interest in the goods, dearly bought and protected by contract, was sufficient to invoke the protection of the Due Process Clause." (internal citation omitted)).

[50] *See id.* at 84 n.14; *id.* at 84-85 (noting that although the deprivation of personal property under a writ of replevin "may be only temporary," even a "temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment"); 1 GRANT S. NELSON ET AL., REAL ESTATE FINANCE LAW § 7:26 ("If *Fuentes* requires a hearing before chattel security can be seized even temporarily, surely the Due Process Clause prohibits the permanent taking of real estate with no opportunity for a hearing.").

[51] *See Massó-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 468 (1st Cir. 2017); *Lawndale Restoration P'ship ex rel. Boulevard Realty Servs. Corp. v. United States*, 95 Fed. Cl. 498, 512 (2010); *B & B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 769-70 (6th Cir. 2005); *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001); *Sol-G Const. Corp. v. United States*, 231 Ct. Cl. 846, 850 (1982); *DSI Corp. v. United States*, 655 F.2d 1072, 1074 (Ct. Cl. 1981).

[52] *See Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462, 471 (1911); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995); *Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766, 770 (7th Cir. 1985).

employment contract.[53] Nor does AHFC distinguish federal cases concluding that federal due process requires an opportunity to be heard before federal agencies can non-judicially foreclose on mortgages they hold.[54] Whatever the law is regarding federal due process rights in federal court, we have not held that the State's contract compliance can free it from Alaska due process obligations. In *Brandner v. Providence Health & Services — Washington* we concluded that a quasi-public hospital violated a doctor's due

---

[53] *See, e.g.*, *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 779 (9th Cir. 1982) (holding that school violated teacher's due process rights when it dismissed him during term of one-year employment contract without providing pre-termination hearing); *see also Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract.").

[54] *See, e.g.*, *Rau v. Cavenaugh*, 500 F. Supp. 204, 209 (D.S.D. 1984) (holding plaintiff's due process rights were violated when Farmers Home Administration's non-judicial foreclosure process did not provide adequate notice or fair hearing); *Ricker v. United States*, 417 F. Supp. 133, 138 (D. Me. 1976) (same); *see also Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 783-84 (11th Cir. 1984) (holding plaintiffs were substantially likely to prevail on merits of due process claim when Farmers Home Administration pre-foreclosure hearing procedure likely did not comport with due process requirements); *United States v. White*, 429 F. Supp. 1245, 1251 (N.D. Miss. 1977) (holding due process required Farmers Home Administration to provide, *prior* to foreclosure: (1) timely and adequate notice detailing reasons for foreclosure; (2) opportunity for borrower to confront and cross-examine witnesses; (3) right of borrower to be represented by counsel; (4) decision based on evidence adduced at hearing; and (5) impartial decision-maker). *But see McCachren v. U.S. Dep't of Agric., Farmers Home Admin.*, 599 F.2d 655, 657 (5th Cir. 1979) (holding mortgagor did not have due process right to pre-foreclosure hearing because default itself was not disputed and mortgagor did not have property interest in possible loan workout).

At least some federal agencies — apparently in response to court rulings — have implemented constitutionally adequate hearing procedures. *See, e.g.*, 24 C.F.R. § 27.5 ("Before commencement of a foreclosure under the Act and this subpart, HUD will provide to the mortgagor an opportunity informally to present reasons why the mortgage should not be foreclosed."); 7 C.F.R. § 1955.15(d)(5) (discussing appeal procedure for foreclosure decisions by Rural Housing Service).

process rights by terminating his admitting privileges without first providing him an opportunity to be heard.[55] Although the termination complied with hospital policies the doctor had agreed to abide by, we nonetheless concluded that the hospital's procedures were constitutionally insufficient.[56] We thus do not find the federal contract cases AHFC cites persuasive authority on this point.

### 2. Anderson did not waive due process rights by signing the note and deed of trust.

AHFC relatedly contends that "Anderson contracted for . . . a specific kind of notice and a specific kind of opportunity to be heard" and that he received the contractual procedure. In other words, AHFC argues that Anderson waived any additional due process protections he may have been entitled to by agreeing in the deed of trust with Wells Fargo that whoever held the note and deed of trust could utilize Alaska's non-judicial foreclosure process. But because Anderson did not knowingly and voluntarily waive any of his due process rights, we reject AHFC's argument.

"[A] waiver of constitutional rights must be knowing and voluntary . . . ."[57] We "indulge every reasonable presumption against" the waiver of constitutional rights and will find waiver via a contractual agreement only when the waiver is "clear."[58] And

---

[55]    394 P.3d 581, 590 (Alaska 2017).

[56]    *Id.* at 589.

[57]    *Brandner*, 394 P.3d at 588.

[58]    *Id.* (quoting *Lynden Transp., Inc. v. State*, 532 P.2d 700, 717 (Alaska 1975)).

we have found a waiver "clear" when contained in an agreement resulting from "a reciprocal negotiation between forces with strengths on both sides."[59]

There is no clear waiver of constitutional rights in Anderson's note or deed of trust. First, no provision in either document expressly waives Anderson's constitutional rights, including the right to a pre-deprivation hearing; indeed, the note and deed of trust were executed in favor of Wells Fargo, which is not a state actor. Second, we note that both agreements appear to be contracts of adhesion,[60] and there likely was no "reciprocal negotiation between forces with strengths on both sides" in this case.[61] We have declined to find an implied waiver of constitutional rights involving an adhesion contract.[62] We similarly decline to find a waiver in this case.

## C. AHFC's Foreclosure Process Violated Anderson's Due Process Rights By Failing To Expressly Provide Him A Pre-deprivation Opportunity To Be Heard.

### 1. Anderson was entitled to a pre-deprivation opportunity to be heard.

Although a post-deprivation hearing often is sufficient under the U.S. Constitution when the government engages in a deprivation of property,[63] we have held

---

[59] *Id.* (quoting *Antinore v. State*, 371 N.Y.S.2d 213, 217 (1975)).

[60] *See OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1081 (Alaska 2005) ("Adhesion contracts arise when 'the parties are of such disproportionate bargaining power that [one of them] could not have negotiated for variations in the terms of the standard [contract].' " (quoting *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 25 n.7 (Alaska 1997))).

[61] *See Brandner*, 394 P.3d at 588 (quoting *Antinore*, 371 N.Y.S.2d at 217).

[62] *See id.* at 588-89.

[63] *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized
(continued...)

that the Alaska Constitution requires more. Under the Alaska Constitution, "before the state may deprive a person of a protected property interest there must be a hearing."[64] In accordance with this principle, we have concluded that some sort of pre-termination hearing is required before a quasi-public hospital terminates a doctor's admitting privileges,[65] before a public employee is fired,[66] before a municipality revokes a taxi license,[67] and before a creditor attaches a debtor's property by court order.[68] "The only

---

[63]     (...continued) intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").

[64]     *Brandner*, 394 P.3d at 589 (quoting *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981)).

[65]     *See id.*

[66]     *See Odum v. Univ. of Alaska, Anchorage*, 845 P.2d 432, 434 (Alaska 1993) ("We have consistently held that due process of law guaranteed by the United States and Alaska Constitutions requires a pre-termination hearing."); *City of North Pole v. Zabek*, 934 P.2d 1292, 1297-98 (Alaska 1997) (holding that city violated public employee's due process rights by terminating her before giving her opportunity to be heard).

[67]     *See Patrick v. Municipality of Anchorage, Anchorage Transp. Comm'n*, 305 P.3d 292, 299 (Alaska 2013) ("The revocation of a taxi license deprives Patrick of her means of support. She is therefore entitled to some form of hearing appropriate to the circumstances *before* revocation, absent an emergency situation or a public safety concern requiring summary action." (footnote omitted)).

[68]     *See Etheredge v. Bradley*, 502 P.2d 146, 153 (Alaska 1972) ("We therefore hold that summary property attachment authorized by Civil Rule 89 violates article I, section 7 of the Alaska [C]onstitution and the due process clause of the fourteenth amendment of the United States Constitution.").

exceptions to this pre-termination hearing requirement are in emergency situations or when 'public health, safety, or welfare require[s] summary action.' "[69]

No exceptions appear relevant in this case. AHFC does not claim that this was an emergency foreclosure or that public health, safety, or welfare required summary action. We thus conclude that some opportunity to be heard was required in this case before AHFC foreclosed on Anderson's deed of trust.

### 2. No procedure AHFC used to foreclose on Anderson's home constituted an "opportunity to be heard."

Although AHFC never explicitly argues that Anderson received an opportunity to be heard, it contends that Alaska's non-judicial foreclosure procedure, along with Wells Fargo's loan-servicing procedures, afforded Anderson sufficient due process. It references six different procedural protections allegedly ensuring that "there is little risk of erroneous foreclosure sales." We conclude that none of these protections constitutes an opportunity to be heard before a neutral and unbiased decision-maker, as required under Alaska's Constitution.[70]

AHFC begins by pointing to Alaska's non-judicial foreclosure statute's notice requirements. Alaska Statute 34.20.070(b) requires that a trustee record notice of a borrower's default in the relevant recording district and provide the borrower notice of the impending foreclosure sale "[n]ot less than 30 days after the default and not less than 90 days before the sale." But this is merely notice of a foreclosure sale with no reference to an opportunity to be heard and raise objections before the sale.

Second, AHFC contends that Anderson was protected against erroneous deprivation of his property interest by his ability to cure his default and stop the

---

[69]     *Brandner*, 394 P.3d at 589 (quoting *Graham*, 633 P.2d at 216).

[70]     *See Brandner*, 394 P.3d at 589.

foreclosure sale.[71]  But the ability to pay money to stop a deprivation of property is not the same as an opportunity to be heard and raise objections prior to the deprivation.

Third, AHFC contends that Anderson's ability to converse with Wells Fargo, his loan servicer, gave him the opportunity to raise any arguments he may have had about an unjustified foreclosure.  AHFC cites no authority for the proposition that customer service telephone calls are an "opportunity to be heard" under the U.S. or Alaska Constitutions.  And Anderson's call transcripts with Wells Fargo reflect that its representatives did not have decision-making authority over Anderson's account.  Due process requires a "meaningful" opportunity to be heard;[72] speaking with a loan service representative who lacks decision-making authority is not a "meaningful" hearing.

Fourth, AHFC argues that "[t]he trustee's role in the nonjudicial foreclosure process offers an additional layer of protection against erroneous deprivation" of property.  Under AS 34.20.070 a non-judicial foreclosure sale is conducted by a trustee who owes fiduciary duties to "both the trustor and the beneficiary."[73]  But as we have previously concluded, "the duties of a trustee under a deed of trust are usually quite narrow:  to conduct a fair sale in the event of the trustor's default."[74]  A trustee's duties do not typically include determining the actual amount owed to the mortgagee in the

---

[71]     *See* AS 34.20.070 ("[I]f the default has arisen by failure to make payments required by the trust deed, the default may be cured and sale under this section terminated by payment of the sum then in default, . . . and attorney and other foreclosure fees and costs actually incurred by the beneficiary and trustee due to the default.").

[72]     *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("It is . . . fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' " (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))).

[73]     *Baskurt v. Beal*, 101 P.3d 1041, 1046 (Alaska 2004).

[74]     *Madden v. Alaska Mortg. Grp.*, 54 P.3d 265, 270 (Alaska 2002).

event of a dispute or whether the mortgagee evaluated allowable mitigation requests in an appropriate manner.[75] A trustee thus is not obligated to act as a neutral arbiter of disputes between a mortgagor and mortgagee, and we conclude that the involvement of a trustee in the sale does not constitute an "opportunity to be heard."

Fifth, AHFC contends that Anderson was given an "opportunity to speak up and prevent an erroneous foreclosure sale" when the trustee included debt collection disclosures in the notice of default that it mailed him. The federal Fair Debt Collection Practices Act requires a debt collector to send a consumer notice containing specific information within five days of the "initial communication" with the consumer about a debt.[76] This information includes a statement that, unless the consumer disputes the debt within 30 days, the debt will be assumed valid as well as a statement notifying the consumer of the right to obtain "verification of the debt."[77] AHFC seems to argue that the trustee's compliance with this law constitutes an opportunity to be heard. But such compliance does not. Most federal courts have set a relatively low bar for the Act's verification requirement. To comply, a debt collector need only "confirm[] in writing

---

[75]     *See id.* As we noted in *Madden*, a trustee's duties under a deed of trust generally derive from either the foreclosure statutes or from the deed of trust itself. *Id.* In this case, as in *Madden*, neither AS 34.20.070 nor the deed of trust requires or authorizes the trustee to verify the amount owed or to determine whether the mortgagee evaluated allowable mitigation requests.

[76]     *See* 15 U.S.C. § 1692g (2012); *Alaska Trustee, LLC v. Ambridge*, 372 P.3d 207, 222 (Alaska 2016), *overruled in part by Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029, 1036-37 (2019); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 & n.5 (4th Cir. 1999).

[77]     *See* 15 U.S.C. § 1692g(a)(3)-(4).

that the amount being demanded is what the creditor is claiming is owed."[78] The trustee followed now-likely-inapplicable federal law[79] by giving Anderson the right to request confirmation of his debt amount, but this does not mean that he received an opportunity to be heard for due process purposes. Debt verification under the Act does not provide a debtor like Anderson the ability to present objections to loan mitigation and related foreclosure action to a decision-maker capable of rectifying any errors.[80]

Finally, AHFC points to two other proceedings in which Anderson could have raised arguments contesting the foreclosure: in an independent lawsuit or in post-foreclosure eviction proceedings. AHFC contends that federal courts have held that an opportunity to bring suit is sufficient to satisfy due process requirements. And AHFC notes that Alaska requires debtors to take affirmative steps to raise a dispute in municipal property tax foreclosures and foreclosures of limited entry fishing permits. Anderson responds that bringing a separate lawsuit or raising foreclosure defenses in a post-foreclosure eviction proceeding are unrealistic options for those likely already in financial distress.

We conclude that Anderson's ability to bring an independent lawsuit or a counterclaim in an eviction procedure is inadequate to satisfy due process. An eviction

---

[78] *Chaudhry*, 174 F.3d at 406; *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("The computer printouts provided to Graziano were sufficient to inform him of the amounts of his debts, the services provided, and the dates on which the debts were incurred.").

[79] *See Obduskey*, 139 S.Ct. at 1038 (engaging in only non-judicial deed of trust foreclosures is not subject to FDCPA's main coverage as debt collector).

[80] *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 22 (1978) (holding that utility company's failure to provide hearing with "employee empowered to review disputed bills and rectify error" before cutting off utility service denied utility customers due process).

proceeding occurs after foreclosure; even if it were a sufficient opportunity to be heard, it occurs post-deprivation. And as discussed earlier, absent exceptional circumstances, the Alaska Constitution requires a pre-deprivation hearing;[81] a pre-foreclosure lawsuit by the borrower is not a reasonable substitute for a hearing. Seeking a pre-foreclosure injunction to stay the foreclosure pending resolution of the lawsuit would require a borrower in financial distress to post a bond.[82] This likely would be a significant barrier for many.[83] Surely we would not countenance a public entity terminating an individual's employment with some advance notice but without a pre-termination hearing simply because the employee could obtain a judicial hearing by filing a lawsuit and seeking injunctive relief. Under the Alaska Constitution a public entity must provide a pre-deprivation hearing to the person being deprived; it is not the other way around.

---

[81]   *See Brandner v. Providence Health & Servs.–Washington*, 394 P.3d 581, 589 (Alaska 2017).

[82]   *See* Alaska R. Civ. P. 65(c) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.").

[83]   The U.S. Supreme Court has concluded that a utility customer's ability to seek injunctive relief prior to utility service termination was insufficient to protect the customer's due process rights because equitable remedies were "too bounded by procedural constraints and too susceptible of delay to provide an effective safeguard against an erroneous deprivation." *Memphis Light*, 436 U.S. at 20. The Court relied in part on utility service termination cases not likely being pursued because they involved "sums of money too small to justify engaging counsel or bringing a lawsuit." *Id.* at 21. Although the sums of money involved are much greater in foreclosure proceedings, Alaskans facing foreclosure likely will be unable to hire a lawyer to file a lawsuit in the vast majority of cases. Anderson apparently was able to be represented by Alaska Legal Services.

The two examples AHFC cites for the proposition that Alaska already requires debtors to take affirmative steps to contest foreclosures are distinguishable. First, when a municipality institutes judicial foreclosure proceedings to enforce a tax lien, a debtor may file objections with the court and have the objections adjudicated by the court through a summary process.[84] But AHFC did not initiate a judicial proceeding in which Anderson could have his objections considered by a neutral decision-maker. And second, unlike the non-judicial foreclosure process in this case, the Commercial Fisheries Entry Commission fishing-permit foreclosure process offers a debtor an opportunity for a hearing.[85]

In summary, AHFC fails to demonstrate that Anderson received a constitutionally sufficient opportunity to be heard. Although "the existence of . . . other, less effective, safeguards may be among the considerations that affect the form of hearing demanded by due process, they are far from enough by themselves to obviate the right to a prior hearing of some kind."[86] Furthermore, we are not persuaded that providing debtors a simple administrative-type hearing prior to foreclosure would result in the parade of fiscal horribles AHFC elaborates in its brief. As Anderson notes, AHFC

---

[84] *See* AS 29.45.370. Another reason the municipal property tax foreclosure process is distinguishable from this case is that the government's power to collect taxes is treated differently than its power to collect other kinds of debts. *See Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931) ("The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. . . . Property rights must yield provisionally to governmental need.").

[85] *See* AS 16.10.335(a)(4) ("If the debtor defaults upon a note for which a limited entry permit has been pledged as security . . . the commissioner shall provide the debtor . . . a notice of default that includes . . . a statement that the debtor may, within 15 days . . . request a hearing to submit evidence showing the debtor has not defaulted.").

[86] *Fuentes v. Shevin*, 407 U.S. 67, 83-84 (1972).

already provides administrative hearings to rental tenants for whom assistance is denied or terminated.[87] A pre-foreclosure hearing need not be elaborate to comport with due process — all that is needed is an opportunity to contest the foreclosure "at a meaningful time and in a meaningful manner."[88] Although providing such a hearing may not be entirely free of cost, we are confident the burden would not be too onerous.

We thus disagree with the dissent's position that Anderson had an actual opportunity to be heard when he filed his lawsuit and could have attempted to stay the foreclosure. We already have noted the unlikelihood that someone in Anderson's situation could post the necessary bond for a foreclosure stay pending litigation. But, more to the point, Anderson's due process claim focused on securing the right to a pre-foreclosure opportunity to be heard regarding a possible loan workout under AHFC's policies and procedures rather than a legal defense to a foreclosure; the superior court ruled that he had no such right. To say that Anderson had an opportunity to be heard by the superior court about his right to be heard by AHFC — a right the superior court said is non-existent — begs the precise question Anderson raised. And, as a result of what

---

[87] *See* ALASKA HOUSING FINANCE CORPORATION, PART L — INFORMAL HEARINGS, https://www.ahfc.us/publichousing/resources/manuals/adelaide-building-administrative-plan/part-l-informal-hearings (last accessed Dec. 16, 2019).

[88] *Fuentes*, 407 U.S. at 79-80 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *accord Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.*, 524 P.2d 657, 661 (Alaska 1974) ("[T]he hearing required need not be an elaborate one. The Supreme Court has frequently provided that due process does not require a full-scale hearing in every situation to which due process applies."); *cf. Lisbon Square v. United States*, 856 F. Supp. 482, 489-90 (E.D. Wis. 1994) (holding that mortgagors waived right to pre-foreclosure hearing when they failed to take advantage of informal meeting offered by Department of Housing and Urban Development to discuss why foreclosure should not take place); *United States v. Ford*, 551 F. Supp. 1101, 1105-06 (N.D. Miss. 1982) (holding mortgagors waived their right to pre-foreclosure hearing by failing to take advantage of opportunity when offered).

the dissent calls an actual opportunity to be heard, Anderson ultimately had judgment entered against him for over $7,000 in attorney's fees. Litigation subjecting Anderson to entry of an adverse attorney's fees award is not what he sought and not what the Alaska Constitution requires in the context of non-judicial property deprivations.

### 3. We presume prejudice when a party is entirely denied a required opportunity to be heard.

AHFC argues that we should reject Anderson's due process challenge because he cannot show he was prejudiced by not having a pre-deprivation opportunity to be heard. AHFC claims Anderson raised no foreclosure defense at any point in this case, despite having the opportunity to do so. AHFC also cites a case in which we said due process does not require a hearing "in the area of administrative law" "if there is nothing to hold a hearing about."[89]

Although we often require litigants to demonstrate possible prejudice before we will find a due process violation,[90] demonstrating prejudice is not required when a litigant was entirely denied a hearing.[91] (Again, we note that Anderson's quest for a pre-

---

[89]     *Miner's Estate v. Commercial Fisheries Entry Comm'n*, 635 P.2d 827, 834 (Alaska 1981).

[90]     *See, e.g.*, *Sarah A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 427 P.3d 771, 779-80, 784 (Alaska 2018) (holding that mother failed to demonstrate due process violation because she was not plausibly prejudiced by court's perceived lack of impartiality in CINA termination trial).

[91]     *See, e.g.*, *Laura B. v. Wade B.*, 424 P.3d 315, 318 (Alaska 2018) (vacating and remanding custody order on due process grounds — without considering harmlessness — because court failed to hold hearing before substantially and materially changing custody arrangement); *Brandner v. Providence Health & Servs.–Washington*, 394 P.3d 581, 590 (Alaska 2017) (concluding doctor demonstrated violation of procedural due process rights because he was not afforded pre-termination hearing, without discussing harm or prejudice).

foreclosure hearing did not relate to legal defenses to a foreclosure, but rather it related to AHFC's discretionary loan-workout authority.) When a party already has received the "minimum" due process required, the party's arguments about prejudice can be grounded in the realities of the process actually received and the outcome. But when a party is denied entirely the right to be heard, requiring proof of prejudice is a hypothetical exercise.

AHFC's argument relies in part on an "exception" to the rule that due process requires an opportunity for a hearing supposedly adopted in *Miner's Estate v. Commercial Fisheries Entry Commission*.[92] In *Miner's Estate* we upheld the Commercial Fisheries Entry Commission's decision not to afford a permit applicant an evidentiary hearing because the applicant raised no "substantial and material issues which required a hearing."[93] We noted that "[a]lthough [a hearing] is normally one of the basic components of due process, it is subject, at least in the area of administrative law, to the exception that one need not hold a hearing if there is nothing to hold a hearing about."[94] But the narrow exception applied in that case turned on the fact that the controlling determination was one of law: whether a person who failed to timely file a permit application by a statutory deadline was legally entitled to an exception by reason of mental illness.[95] The hearing that was not held originally was intended to determine the extent of the applicant's mental illness.[96] We concluded that because there was no

---

[92]     635 P.2d at 834.

[93]     *Id.*

[94]     *Id.*

[95]     *Id.* at 829, 834.

[96]     *Id.*

legal basis for the proposed exception, there was no need for the evidentiary hearing.[97] But the appellant clearly had an opportunity to be heard on the controlling legal issue.[98]

*Miner's Estate* is both distinguishable and inconsistent with our more recent *City of North Pole v. Zabek*[99] decision and with the U.S. Supreme Court's *Fuentes v. Shevin*[100] decision and must be limited to its facts. In *Zabek* the City of North Pole terminated a police dispatcher's employment after her Alaska Public Safety Information Network clearance was revoked.[101] The City argued that no pre-termination hearing was required because the dispatcher did not contest that her clearance had been revoked or that having it was a requirement of her job.[102] We rejected the City's argument, holding that even if a case seemingly presents no factual issues, "it is not possible to be certain without a proper hearing."[103] We noted:

> [O]ne of the reasons a pre-termination hearing is required is to give the employee the opportunity to present in her defense facts which, if developed, might weigh against her termination. *Even if it appears almost certain that the*

---

[97]  *Id.*

[98]  *Id.* at 829.

[99]  934 P.2d 1292 (Alaska 1997).

[100]  407 U.S. 67 (1972).

[101]  934 P.2d at 1295.

[102]  *Id.* at 1297.

[103]  *Id.* at 1297-98 (quoting *McCarrey v. Comm'r of Nat. Res.*, 526 P.2d 1353, 1357 (Alaska 1974)).

*employee will be unable to do so, due process requires that she be given the opportunity to try.*[104]

In *Fuentes v. Shevin* the U.S. Supreme Court held that Florida's and Pennsylvania's replevin statutes were invalid because they deprived debtors of property without affording them a prior opportunity to be heard.[105] The Court noted that it was possible the debtors were not, in fact, entitled to continued possession of the household goods at issue.[106] But the Court stated:

> [E]ven assuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. *The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing.* "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit."[107]

Following *Zabek* and *Fuentes*, we reject AHFC's argument that Anderson was required to demonstrate prejudice in this case.

## V.    CONCLUSION

We REVERSE the superior court's summary judgment decision regarding due process and REMAND for further proceedings consistent with this opinion.

---

[104]    *Id.* at 1298 (emphasis added).

[105]    407 U.S. 67, 96 (1972).

[106]    *See id.* at 87.

[107]    *Id.* (emphasis added) (footnote omitted) (quoting *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)).

STOWERS, Justice, dissenting.

I dissent from the court's holding that Anderson did not receive a constitutionally sufficient opportunity to be heard before AHFC non-judicially foreclosed on the deed of trust. Anderson filed a notice of lis pendens and brought suit against AHFC in April 2017. Although he alleged a number of tort and constitutional claims, he did not seek a preliminary injunction to prevent the foreclosure sale, which went forward in August 2017. Thus it is evident that Anderson had an actual opportunity to be heard prior to the foreclosure sale; he simply failed to avail himself of the opportunity. In my opinion, no more process was due.

Not only does the court needlessly create a requirement for a pre-foreclosure hearing in Anderson's case, it also needlessly creates additional burdens of time (delay) and expense (attorney's fees) to the non-judicial foreclosure process — a process intended to avoid delay and expense. Neither the facts of this case nor the constitution requires these unnecessary burdens.