*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALISA BURNS, | ) | |
| | ) | Supreme Court No. S-17394 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-06683 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOHN EVERETT BURNS, | ) | |
| | ) | No. 7462 – June 26, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: John J. Sherman, Mendel Colbert & Associates, Inc., Anchorage, for Appellant. John E. Burns, pro se, Anchorage, Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I.   INTRODUCTION

A mother appeals a final order modifying custody of her three children. She argues that the modification was to punish her and was not based on the best interests of the children. She asserts that the superior court clearly erred in finding that she misrepresented information to third parties, including her son's medical providers. She additionally argues that she was denied due process because the superior court did

not give her expert the opportunity to defend his methodology once the court determined that his psychological evaluation was outside the scope of its expectations. And she asserts that the superior court erred in assigning no weight to her expert's evaluation in making its credibility determinations.

We conclude that the modification was not made to punish the mother. The superior court based its underlying findings on the children's best interests. And the superior court did not clearly err in finding that the mother misrepresented information to third parties. We also conclude the mother was provided a meaningful opportunity to be heard. It was within the superior court's discretion to decide how much weight to assign the psychological evaluations in making its credibility determinations. We therefore affirm the superior court's order modifying custody.

## II.    FACTS AND PROCEEDINGS

Alisa and John (Jay) Burns married in California in 2006. Alisa and Jay had three children during their marriage: a daughter born in 2009, a son born in 2010, and a daughter born in 2014. Alisa and Jay separated in 2017 and divorced in early 2018 in Anchorage.

The superior court held an interim custody hearing in September 2017, after Alisa went on vacation with the children to New York, rented an apartment while there, and requested interim custody on an expedited basis so that the children could start the school year in New York. The court denied Alisa's request for interim custody, and the children returned to Anchorage until a final custody hearing in December 2017. In a "very close custody case," the court awarded joint legal custody to Alisa and Jay, but gave Alisa primary physical custody and permission to move with the children to New York. The court ordered that Jay have visitation over summers and certain holidays and that he "have frequent, open, and age-appropriate telephone, texting, and Facetime contact with the children."

In April 2018 Jay filed a motion requesting that the court vacate its findings of fact and conclusions of law after Jay and Alisa's son was hospitalized for behavioral issues in New York. The court exercised its discretion and deemed Jay's motion a motion for custody modification; however, it required Jay to file a supplemental motion reframing the argument under the proper modification standard. Alisa was given the opportunity to file an opposition.

## A.    The Health Discovery Protective Order And Psychological Evaluations

The mental health and credibility of the parents became a point of contention, as both Alisa and Jay made allegations about why mental health, manipulative behaviors, and untruthfulness made the other parent unfit to care for the children. Alisa requested, and was granted, a protective order barring Jay "from propounding discovery relating to [Alisa's] past mental or physical health." Instead, in the protective order, the superior court ordered that each party "submit to psychological evaluation for the purpose of identifying any *current* psychological conditions/issues that could affect the parent's capacity to care for the children." (Emphasis added.)

During a status hearing, Alisa explained that she was having trouble finding a psychologist who would accept her health insurance to administer the evaluation, that she was not entirely clear on what the court would like evaluated, and that the evaluation might not be complete prior to the custody modification hearing. The court clarified that it was interested in an evaluation of her mental health, particularly addressing the allegations that she suffered from borderline personality disorder, depression, or post-traumatic stress disorder: "Because the mental health of the children, particularly [the son] actually, is really critical here . . . ."

The court indicated that if Alisa could not obtain an evaluation before the September hearing date, then both evaluations could be submitted to the court post-hearing without testimony or opportunities for cross-examination. The court also

suggested cross-examining the evaluators telephonically after the psychological evaluations were completed.

By the final status hearing it was apparent that Alisa's evaluation would not be finished in time for the custody modification hearing. The court reasoned that in fairness both evaluations should be handled in the same manner, and Alisa and Jay agreed to submit their evaluations post-hearing for the court to consider without further testimony or cross-examination. Alisa submitted her psychological evaluation in October 2018. The evaluation "was based on a review of materials provided by both parties' counsel, an interview with Alisa as well as one of her therapists, a series of psychometric tests, and a home visit."

**B.     Alisa's New York Petition To Modify Custody Or Visitation**

While these proceedings were underway in Alaska, Alisa had filed a petition to modify custody or visitation with the New York Family Court in April 2018. Alisa requested a temporary, emergency protective order, alleging that Jay's "manipulations" were "exacerbating the children's serious mental health issues," particularly their son's. This temporary protective order was granted. The Alaska and New York courts discussed Alisa's petition and the protective order, and decided on "truncated summer visitation" between Jay and the children. Jay's Skype and telephone communication with the children was also stopped for approximately two months as a result of this protective order.

**C.     The Custody Modification Hearing**

The Alaska superior court held a two-day custody modification hearing in September 2018. As noted by the court, Jay and Alisa "present[ed] diametrically opposed testimony" on many topics. They provided conflicting testimony on the impact of the move on their younger daughter's potty training and their older daughter's

adjustment to her new school. The bulk of the testimony, however, focused on their son's mental health and hospitalization.

In Jay's testimony about his son's mental health, Jay noted that during summer visitation, his son demonstrated "separation anxiety" behaviors that he had never witnessed before the New York move. Jay cited several examples of Alisa allegedly providing inaccurate information to emergency room personnel and doctors treating their son; this included providing inaccurate information about the family medical history, misrepresenting their son's behavioral history, and mischaracterizing the reason he repeated kindergarten. Jay asserted that because Alisa "l[ied] to doctors," their son did not receive appropriate mental health treatment and was prescribed medications "he's not supposed to be on."

Jay further testified that Alisa provided low-quality communication opportunities between him and the children during Skype and telephone calls, in contrast to the "no distractions" communication time he provided for Alisa during his summer visitation. Jay stated that there were "[c]onstant distractions" during the Skype calls and that Alisa gave the children snacks and toys as if she were "trying to sabotage the communication." Jay alleged Alisa provided inaccurate descriptions of various calls he had with the children to get the protective order in New York and separate him from the children.

Alisa testified on the second day of the custody modification hearing. When asked about her son's mental health, she described his "anxiety and aggressive behavior towards his sisters." Alisa refuted the notion that his behavioral issues developed after the New York move. Instead, she testified that she had two emails from her son's former teacher in Alaska, which were entered as an exhibit, that expressed his teacher's concern that her son was "breaking things and throwing things" and "chasing students in the classroom." When questioned by the court about her son's behaviors

prior to the hospitalization, Alisa described him making a comment about self-harm, trying to grab a knife from her hand while she was cooking, and threatening to hurt her.

Alisa stated that she "first heard from [her son] about the stress of the conversations with his dad" when she put her son in therapy to cope with the stress of the divorce and move. She testified that Jay asked for privacy during the calls, so she initially provided the children with headphones in their bedrooms. However, she stated that she began noticing a pattern of her son "coming out of the call sometimes crying or really agitated." She characterized Jay as pressuring the children to use Skype. Alisa identified Jay's calls with her son as a "stressor[]," and she alleged that he "shut down" and was "more aggressive" after the two weeks of summer visitation with Jay. Alisa testified that Jay focused on "negative thing[s]" and said "things that they're too young to be hearing at all" about the divorce and custody.

When questioned about inconsistencies in the medical records surrounding her son's hospitalization, Alisa explained that what she told medical personnel did not always match what was transcribed in the records and that any inaccuracies were unintentional.

**D.     The Superior Court's Findings Of Fact And Conclusions Of Law Supporting Custody Modification**

The superior court issued written findings of fact and conclusions of law in March 2019. The court explained it "consider[ed] primarily the needs of the children, the parents' respective abilities to meet the children's needs, and [Alisa's] ability to foster a relationship between the children and [Jay]." The court noted that its initial December 2017 custody determination had been "a very close custody case," and that in granting Alisa primary physical custody to move with the children to New York "it emphasized that it was going to be very important that [Alisa] support an open and

-6-                                                                        **7462**

loving relationship between the children and their father, consistent with AS 25.24.150(c)(6)."

In discussing the children's needs, the court found that since the move to New York, the son "had begun having significant behavioral issues, including assaultive behavior toward his mother and attempting to hurt himself." And it stated there was "no dispute" that the son "has experienced mental health issues in New York," was hospitalized for a "substantial period," and "has generally been having a very difficult time since moving to New York." Therefore the court found that the son's "emotional needs are particularly demanding and important at this time." The court noted that the younger daughter seemed "generally happy," and the older daughter "doesn't like the limiting nature of the phone calls" with Jay following issuance of the New York protective order and "doesn't seem to be adjusting terribly well."

The court examined how Alisa handled her son's mental health treatment in New York. The court found that Alisa did not provide complete and accurate information to the emergency room personnel and doctors treating her son. And it stated: "[I]n terms of the children's physical, emotional, mental and social needs as well as the capability and desire of each parent to meet those needs, as set out in AS 25.24.150, (c)(1) and (2) . . . [Alisa's] repeated misinformation and miscommunications provided to third parties, including medical care providers, has the potential to pose unacceptable risks to [her son]." The court found that Jay "is capable of caring for the children, including [his son's] unusual needs at this time, which weighs this factor slightly more in [Jay's] favor."

While considering Alisa's ability to foster a relationship between the children and Jay, the court found that a few days after Jay filed his first motion seeking a custody modification, Alisa filed a petition in New York seeking a family protective order. The court noted that "though it was appropriate for [Alisa] to be allowed to access

the New York courts for an emergency protective order, her representations to that court should have been accurate." In seeking the protective order, Alisa represented to the New York court that Jay intimidated, manipulated, and emotionally abused the children through their telephone and Skype calls. The court found that "the tenor of Jay's communication with his children was loving, engaging, creative and appropriate, and not at all like the controlling, intimidating, or manipulative tenor which has been suggested by Alisa." The court also found that Alisa did not accurately represent what occurred in specific calls between Jay and the children.

The court explained the detrimental impact that the New York protective order had on Jay's relationship with the children: "[B]ased in significant part" on Alisa's misstatements, "Jay wasn't allowed to communicate with his children at all for two months" and "only a truncated summer visitation between [Jay] and the parties' children was permitted by the court." The court concluded that "overall, [Alisa] made multiple misstatements, provided information that wasn't complete or was inaccurate, and in a few instances simply not supported by the evidence or facts . . . that resulted in [Jay] having less access to his children, which this court considers to be very important." As a result, the court had "great concerns about [Alisa's] ability on an ongoing basis to foster that open and loving relationship between the children and their father."

The court stated that it requested the psychological evaluations so it "could better determine if one party or both had issues affecting the children that needed to be addressed." The court reviewed the psychologist's report on Jay indicating that he was suffering from "adjustment disorder," but it explained "[t]here was nothing in the report saying that he suffered from any diagnosis that would cause this court to have great concern." The court was "puzzled" by the psychologist's report on Alisa, explaining that going "to her home to observe her with the children" was "unusual" and " 'outside the box,' such that the court gave limited or no weight to that doctor's report." In its oral

findings, the court noted that it did not "take any negative implications . . . from the report" on Alisa, and the court did not make any findings that Alisa was suffering from a mental disorder. The court was, however, concerned about Alisa's inability to "set aside her own interpretation" of Jay's behavior, which is "not consistent with reality," and questioned her ability to meet the children's needs.

The court granted Jay primary physical custody and noted that it "gave serious consideration to placing legal custody solely in Jay" because of Alisa's "multiple misrepresentations about the children to third parties, especially medical personnel," but the court "hope[d] for better decisions going forward."

### E. The Superior Court's Denial Of Alisa's Motion For Reconsideration

Alisa filed a motion for reconsideration, arguing that the court should have allowed her "evaluator to support or explain his evaluation." Alisa alleged that "[w]ere he given the opportunity, [Alisa's evaluating psychologist] could testify regarding his process, his reasoning, and the basis for his conclusions." Alisa additionally argued that the superior court had not considered any recent developments, which would be appropriate given the "quickly progressing issues related to [their son's] mental health."

The superior court issued an order denying Alisa's motion for reconsideration. First, the court noted that Alisa and Jay had stipulated that Alisa's "psychological evaluation could be submitted post-hearing and that the court could consider it without taking testimony from the evaluator." The court also acknowledged that although it "did not place weight on [Alisa's] evaluation, it also did not find that [Alisa] suffered from any particular mental disorder" and so "the evaluation is arguably consistent with the court's decision." Secondly, the court explained that its "decision was substantially based on the court's finding that [Alisa] has not fostered an open and loving relationship between [Jay] and the children — this finding cannot be affected by the passage of three months."

Alisa appeals.

## III. STANDARDS OF REVIEW

"Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[1] The trial court's "broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[2] We "set aside the [trial] court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[3]

When reviewing factual findings, we "conclude that a factual finding is clearly erroneous if, based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made; we may conclude a finding is clearly erroneous even if there is some evidence in the record to support the finding."[4] We "give particular deference to those findings when . . . 'most of the trial evidence consists of oral testimony.' "[5]

---

[1]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[2]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (citing *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012)).

[3]     *Rego*, 259 P.3d at 452 (citing *Ebertz*, 113 P.3d at 646).

[4]     *Id.*

[5]     *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Silvers v. Silvers*, 999 P.2d 786, 792-93 (Alaska 2000)).

"When determining the requirements of due process, we look to the test enunciated by the United States Supreme Court in *Mathews v. Eldridge*."[6] "Not every potential deprivation of protected interests results in a due process violation."[7] "[T]he crux of due process is having a meaningful opportunity to be heard and represent one's interests."[8]

## IV. DISCUSSION

Alisa raises multiple arguments on appeal. Her first argument is that it was a denial of due process for the court to "disallow additional evidence to support" her expert's psychological evaluation report. She additionally asserts that the court erred in giving "limited to no weight" to the report in making its credibility determination. Alisa next argues that the court modified custody to punish her for perceived misrepresentations, rather than advance the children's best interests. Her final argument is that the court clearly erred in finding (1) that she misrepresented facts to third parties, including medical personnel and the New York court, (2) that Jay's calls with the children were largely loving and appropriate, and (3) that her description of Jay's calls as manipulative and intimidating was inaccurate.

### A. The Superior Court Did Not Deprive Alisa Of Due Process, Nor Did It Err In Assigning Her Psychological Evaluation Little Weight.

Alisa argues that the superior court erred by ordering the parties to obtain psychological evaluations "to resolve critical disagreements between the parties" and then "excluding" her report, but making "substantial findings about the parties'

---

[6]     *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[7]     *Id.*

[8]     *Dennis O. v. Stephanie O.*, 393 P.3d 401, 411 (Alaska 2017).

credibility in apparent reliance on [Jay's] report." Alisa asserts that the superior court should have allowed her to call her evaluating psychologist to support the methodology in his report before "excluding" her report. Alisa thus suggests that she was denied her due process opportunity to be heard because the superior court's alleged lack of consideration of her psychological evaluation report created an "evidentiary void" regarding her credibility in making the custody modification.

Alisa specifically argues that it was a denial of due process for the court to disallow additional evidence to support her psychological evaluation, and that by agreeing "to submit this evidence for the court's consideration in the form of the reports only," she did not waive the "opportunity to present evidence contained in [her] own report." Alisa asserts that "[b]y preventing [her] from providing a foundation for her expert's testimony and instead ignoring the testimony entirely, the court interfered with Alisa's right to present evidence [that] the court had itself identified as necessary for the case." As a result, Alisa argues, the superior court giving "no consideration" to her "required psychological evaluation cannot be dismissed as immaterial or harmless."

"Due process requires a 'meaningful' opportunity to be heard."[9] "[W]e typically identify due process violations in the custody context when a party has not had notice of the consequences of a particular hearing and lacked adequate time to prepare."[10] "When a party already has received the 'minimum' due process required, the party's arguments about prejudice can be grounded in the realities of the process actually

---

[9]     *Anderson v. Alaska Hous. Fin. Corp.*, 462 P.3d 19, 30 (Alaska 2020) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)).

[10]     *Weathers v. Weathers*, 425 P.3d 131, 138 (Alaska 2018).

received and the outcome."[11]  A "party raising a due process objection must show that [the party] has suffered actual prejudice."[12]

We note the superior court did not make any adverse findings about Alisa's mental health.  We further note that Alisa's various assertions that the superior court excluded, gave no consideration to, or ignored her report are inaccurate.  The superior court's written findings demonstrate it clearly considered Alisa's evaluation report.  The court stated it was confused by her evaluating psychologist's unorthodox methodology of observing her in the home, and, accordingly, "gave limited or no weight to that doctor's report."  Contrary to her assertions, Alisa was not denied the opportunity to present the information contained in her own report.

Alisa's due process argument is predicated on the idea that the superior court made its credibility findings based largely on the psychological evaluations.  She asserts that the court relied on Jay's evaluation, but gave no weight to her evaluation report, thereby unfairly favoring Jay in the credibility determinations.  Alisa implies that her case was harmed because the lack of weight given to her report undermined her credibility and "a finding that a party lacks credibility infects all other findings."

Alisa's argument appears to assume that she suffered prejudice in the credibility determination because her evaluator was not given an opportunity to defend his methodology.  The record, however, does not support this assumption.  Instead, the superior court explained that the reason it requested psychological evaluations was because of the parties' "widely divergent views of the facts."  But the superior court did not use Alisa's evaluation report to resolve the parents' conflicting narratives.

---

[11]     *Anderson*, 462 P.3d at 33.

[12]     *Regina C. v. Michael C.*, 440 P.3d 199, 205 (Alaska 2019) (alteration in original) (quoting *Moody v. Royal Wolf Lodge*, 339 P.3d 636, 643 (Alaska 2014)).

After considering all of the evidence presented — testimony, transcripts and selected records of calls, and exhibits, including school reports, medical records, and Alisa's filings in New York — the superior court made findings that Alisa provided inaccurate and incomplete information to third parties on multiple occasions. In explaining inaccuracies in the medical records, Alisa described it as "like a telephone game where I was giving them as much information as I could to try to be helpful . . . and some of it, you know, was changed." The superior court found that Alisa's explanation for inconsistencies in the medical records was not "credible" and was "difficult to believe." The court reasoned there were multiple inaccuracies in the medical records because Alisa had made inaccurate statements, and it doubted that medical personnel got it so "wrong" as to change one statement into a completely different statement.

Trial courts receive particular deference in evaluating oral testimony because "[i]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[13] The superior court did not base its findings that Alisa made inaccurate representations on her suffering from a mental illness, so even if Alisa's evaluator had defended his methodology, this would not address the inaccuracies in her son's medical records or the "difficult to believe" aspects of her testimony. Rather, her multiple misrepresentations to third parties, including the New York court and her son's medical providers, undermined her credibility because they indicated to the court that Alisa was unable to take an objective view of reality.

The superior court did not err in assigning "limited or no weight" to Alisa's psychological evaluation report. And we conclude that the superior court did not deprive Alisa of a meaningful opportunity to be heard.

---

[13] *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

**B.**     **The Superior Court Made Findings Based On The Statutory Best Interests Of The Children Factors.**

Alisa asserts that the superior court's decision to modify custody "focused on findings that Alisa had not accurately reported information to medical professionals and New York Child Protective Services" and "that Alisa had not fostered a relationship between the children and Jay," and was therefore intended to punish her. Alisa cites *Hakas v. Bergenthal*,[14] arguing that the children's best interests, not a desire to reward or punish a parent, should guide the custody determination.

The record supports that the superior court awarded primary physical custody to Jay because three of the best interests factors that it identified as important in this case weighed in his favor. Given that their son's hospitalization was the change in circumstances prompting the custody modification hearing, the court reasonably devoted considerable time to discussing their son's mental health needs and to assessing how capable each parent was of meeting those needs. The court also explained that when it originally granted Alisa primary physical custody and permission to move to New York with the children, it had "emphasized that it was going to be very important that [Alisa] support an open and loving relationship between the children and their father, consistent with AS 25.24.150(c)(6)." The court thus clearly identified which factors it found to be the most important and why those factors were particularly relevant to the children's best interests.

Furthermore, in discussing its concerns about Alisa's misrepresentations, the superior court explained how these misrepresentations impacted the children's best interests. The findings regarding Alisa's misrepresentations can be grouped into two overarching categories. First, the court made multiple findings about how Alisa's

---

[14]     843 P.2d 642, 644 n.3 (Alaska 1992).

misrepresentations interfered with the children's relationship with Jay by preventing contact for several months and then truncating his summer visitation, calling into question Alisa's ability to foster a relationship between Jay and the children going forward. Secondly, the court made findings that Alisa made inaccurate and incomplete statements to her son's medical providers, including emergency room personnel and her son's treating doctor, and it explained that providing inaccurate information posed "unacceptable risks" that her son would not receive appropriate mental health treatment. The court found that Jay "is capable of caring for the children, including [his son's] unusual needs at this time," weighing this factor in his favor.

We conclude that the superior court made clear findings based on the statutory best interests factors. The record does not support Alisa's contention that the superior court modified custody to punish her.

### C.     The Superior Court's Findings Of Fact Are Not Clearly Erroneous.

Alisa argues that the superior court clearly erred in determining that she was "not credible based on an exhibit never offered or admitted into evidence, as well as a misinterpretation of how [her] statements compared to transcripts, testimony, and documents in the record." Alisa argues that the superior court clearly erred in finding that the overall tenor of Jay's calls with the children was "loving, engaging, creative and appropriate," rather than "controlling, intimidating or manipulative."

The superior court not only reviewed the transcripts of Jay's calls with the children, but also listened to recordings of many of the conversations. Based on its extensive review of the calls, the superior court found that Alisa misrepresented specific conversations between Jay and the children, as well as the overall tenor of the conversations. As noted by the superior court, there were a few "outlier[]" calls, but the superior court's assessment of the general nature and tone of the calls between Jay and the children is not clearly erroneous.

Alisa also argues that the superior court erroneously found that she "misrepresented" information to medical providers because she described her son as "careless, impulsive with bad boundaries, and struggl[ing] with rules and limits." She asserts that the superior court should have acknowledged Exhibit 30, containing two emails from her son's teacher in Alaska, which indicated that her son was having behavioral issues at his school in Alaska during the divorce.

Alisa's argument, however, glosses over the nuances of the superior court's findings. The court found that "[her son] generally didn't have a history of those sorts of behaviors, and that [Alisa] didn't present the whole picture to the medical providers." Although the two emails from his former teacher may suggest that her son had a few behavioral issues during his final months in Alaska, the superior court also considered school records from New York that indicated her son "lights up any room" and was "a pleasure to have in class." The fact that the superior court did not credit the emails over more recent school records does not leave "us with a definite and firm conviction that a mistake has been made" by the court in characterizing her son's general behavioral history.[15] Therefore the superior court did not clearly err in its finding that Alisa did not "present the whole picture to the medical providers."

Alisa argues that Exhibit 21 — an exhibit that was never admitted into evidence — should not have been relied on by the superior court in making its findings. Exhibit 21 is a document that Jay requested from the New York Office of Children and Family Services; this document contains an "Intake Narrative" from an unidentified caller alleging that Jay "intimidates, interrogates, and grills" the children via Skype calls. Jay, and later the superior court, attributed these statements to Alisa.

---

[15]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

Alisa is correct that the superior court improperly relied on Exhibit 21 for the finding that she inaccurately reported that Jay interrogated the children daily about what Alisa was doing. This error, however, was harmless. The court also relied on Exhibit I, a document prepared and filed by Alisa to obtain a protective order from the New York court, to make multiple other findings regarding Alisa's inaccurate allegations about the calls between Jay and the children. In Exhibit I Alisa states that Jay "is manipulating, harassing, and controlling the children . . . via Skype on a daily basis." This exhibit supports the same finding regarding Alisa's mischaracterization of Jay's communications with the children.

Alisa additionally argues that the superior court's finding regarding her "false characterization" to the New York court that her summer 2017 move to New York was with the superior court's permission was clearly erroneous. She asserts that she was simply presenting her "lay understanding of this process," and the superior court found her statements inaccurate because she "did not use a term of art." Furthermore, she suggests even if an inaccurate statement had been made, "it is unclear how this statement could possibly affect . . . any determination by the New York Court that protective action was needed regarding the Burns children."

The superior court noted that Alisa had been granted permission to take a vacation to New York, but explained she moved for an order allowing her to stay with the children in New York only after she had already gone to New York and leased an apartment. The superior court found her testimony that she believed she accurately characterized the sequence of events "unconvincing," particularly because "the aftermath of that move made it very clear it hadn't been approved by this court at all." The record indicates that Alisa's statements did not just fail to use the appropriate term of art: She mischaracterized the timeline of events regarding the move to New York. Finally, we note the superior court did not find that this statement impacted the New York protective

action determination, but rather this finding is part of a larger pattern of inaccurate statements made by Alisa that are relevant to her credibility. The superior court did not clearly err in its findings that Alisa falsely characterized to the New York court her move to the area and that her explanation of this false characterization was unconvincing.

Based on our review of the entire record, the superior court did not clearly err in its findings of fact.

## V.  CONCLUSION

We AFFIRM the superior court's custody modification order.

**7462**