NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KAREN CHICHENOFF, f/k/a Karen Blondin, | ) ) ) | Supreme Court No. S-17703 |
| Appellant, | ) ) | Superior Court No. 3AN-17-11178 CI |
| v. | ) ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| BRADFORD BLONDIN, | ) ) | No. 1848 – September 15, 2021 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Karen Chichenoff, pro se, Anchorage, Appellant. Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellee.

Before: Winfree, Maassen, Carney, and Borghesan, Justices. [Bolger, Chief Justice, not participating.]

## I.     INTRODUCTION

Karen Chichenoff and Bradford Blondin divorced after two years of marriage. The superior court awarded Chichenoff conditional sole legal custody and primary physical custody of the parties' daughter. The superior court also divided some of the parties' property and debt. Chichenoff appeals, arguing that the superior court made several incorrect findings of fact and should not have awarded Blondin parenting

---

\*     Entered under Alaska Appellate Rule 214.

time. She also argues that the superior court erred in dividing the couple's property and debt. We affirm the superior court's custody and visitation award. We also largely affirm the superior court's property division but remand for additional findings on certain items.

## II. FACTS AND PROCEEDINGS

### A. Facts

Chichenoff and Blondin married in Kodiak in October 2014. They have one child together — a daughter named Daisy.[1] Chichenoff works full time in Anchorage, while Blondin works as a commercial fisher in Kodiak. The couple separated in August 2016.

### B. Proceedings

#### 1. Preliminary proceedings

Chichenoff filed a complaint for divorce and child custody in December 2017 seeking sole legal and physical custody of Daisy. In June 2018, the superior court ordered Blondin to pay $103 per month in child support. In early 2019 Blondin filed a motion to preclude Chichenoff's boyfriend, who was living with Chichenoff and Daisy, from contacting Daisy. Blondin alleged that Daisy was afraid of the boyfriend due to his violent behavior toward her. Chichenoff denied these allegations. The superior court subsequently entered an order prohibiting any contact between Daisy and Chichenoff's boyfriend.

The superior court held a custody trial on September 30 and October 1, 2019. Both Chichenoff and Blondin testified during the trial, as did Chichenoff's parents, Blondin's parents, and Chichenoff's boyfriend. Testimony focused on the parties' relationship with each other, particularly as their marriage disintegrated, and how

---

[1] This opinion uses a pseudonym to protect the child's privacy.

their relationship affected Daisy. Both parties testified to instances of domestic violence in the relationship.

The testimony also addressed the dispute over property subject to division: outstanding debt for Daisy's taekwondo classes and a commercial fishing boat that Blondin skippered. Chichenoff testified that the debt for the taekwondo classes amounted to at least $3,700 and that Blondin had agreed to pay all of it with help from his mother. Blondin conceded that he may have agreed to that at one point but testified that was not what he intended; Blondin's mother also testified that she paid for the equipment and first month, but did not intend to foot the entire bill going forward every month.

The parties disagreed on whether the boat was marital property. Chichenoff argued that it was. She testified that she acquired the boat with Blondin before the marriage and that they were married on the boat. She also testified that although Blondin's parents rebuilt the boat and Blondin made payments on the boat, it was ultimately the couple's boat. Blondin's mother testified that she and her husband had bought the boat off the beach and rebuilt it. She testified that they had paid for everything and that Blondin did not own the boat. But Blondin's mother also testified that she asked Blondin to pay them "at least the amount of the loan payment" for the boat. She also testified that, after Blondin and Chichenoff separated, Blondin's parents sold the boat and used the money to buy a larger boat to be used by Blondin.

The superior court issued a decree of divorce and reserved judgment on custody, visitation, and property division for a later date. Blondin then filed a motion to modify custody. Blondin pointed to several instances of Chichenoff allegedly violating court orders, including by preventing contact between him and Daisy and by leaving Daisy alone with Chichenoff's boyfriend.

## 2. Superior court's findings of fact and conclusions of law

Several months after trial, the superior court entered its findings of fact and conclusions of law on custody and property division. It noted that the couple's divorce was "a very high conflict" case and that "both parents have problems with credibility." The superior court also found that Daisy "has psychological needs," which it believed "are a result of the toxic relationship between" Chichenoff and Blondin. It noted that in one particular incident the couple fought in front of Daisy, who was crying, but "neither parent cared how their behavior impacted the child."

The superior court took issue with Chichenoff's "deliberate failure to follow [c]ourt orders" throughout the case. The court had previously ordered that Daisy not be left with Chichenoff's boyfriend due to accusations of domestic violence made against the boyfriend by the custody investigator. Blondin alleged that while Chichenoff went to Kodiak, her boyfriend cared for Daisy in violation of this order. The superior court noted that it was concerned with Chichenoff's "blatant refusal" to follow its prior orders and her allegedly leaving Daisy in a dangerous situation with the boyfriend. But because Chichenoff had taken steps to address Daisy's emotional and behavioral issues, the superior court found that Daisy's needs favored Chichenoff having primary custody.

The superior court found that Chichenoff had interfered with Blondin's relationship with Daisy throughout the litigation by refusing him parenting time or by conditioning parenting time on giving Chichenoff money. The court noted that Chichenoff also refused Blondin parenting time over the holiday season and ignored Blondin's calls to Daisy.

The superior court found that based upon the trial testimony there was insufficient evidence to support a finding of domestic violence. It noted that Blondin's communications with Chichenoff (including his emails, texts, and social media) came close to harassment and that these communications affected Daisy.

After weighing these factors and considering the report from the child custody investigator, the superior court decided it was in Daisy's best interests to award conditional sole legal custody and primary physical custody to Chichenoff. The superior court clarified that conditional legal custody meant that Chichenoff "is ordered to discuss and communicate all major decisions" — including "medical, dental, or mental health issues" with Blondin and "make sure" Blondin is aware of all medical appointments and counseling sessions. The trial court ordered that if the two cannot agree on the decision to be made, then Chichenoff "will make the final decision." The court warned Chichenoff that if she did not follow these instructions, then it would reevaluate legal custody.

The superior court also found that "it is in [Daisy's] best interest to have frequent parenting time and open communication with [Blondin]," so it issued a custody schedule that gave Blondin parenting time in January, February, March, and the summer months. Chichenoff and Blondin were to alternate custody for Thanksgiving and Christmas holidays every other year.

In addressing disputed property, the superior court concluded that the commercial fishing boat was not marital property but instead belonged to Blondin's parents. It found the taekwondo debt was marital debt to be split between the parties.

The following month the superior court modified the custody order, requiring Blondin's visitation to be supervised by Daisy's paternal grandmother.

Chichenoff appeals, arguing that the superior court made several incorrect findings on both custody and property division.

## III. DISCUSSION

### A. Chichenoff's Challenges To The Superior Court's Interim No-Contact Order And Its Award Of Unsupervised Visitation To Blondin Are Moot.

Two of Chichenoff's arguments on appeal challenge orders that are moot. First, she challenges the superior court's reliance on the order prohibiting contact between her boyfriend and Daisy. This order is no longer in effect, so any challenge to its substance is moot.[2] Although the superior court's custody ruling faulted Chichenoff for disobeying this order, whether the order was correct or not is irrelevant to Chichenoff's duty to follow it. Therefore we do not consider this issue.

Second, Chichenoff argues that the superior court should not have allowed Blondin unsupervised visitation time because of his drug use. Citing that very reason, the superior court has already modified its original order to permit Blondin visitation only if supervised by his mother. So this issue is also moot.

### B. The Superior Court Did Not Abuse Its Discretion In Awarding Custody.

In a divorce action, the superior court shall determine custody of a child in accordance with the child's best interests.[3] Chichenoff challenges several of the court's factual findings related to its analysis of Daisy's best interests. We review the superior court's "factual findings for clear error, which exists only when we are 'left with a definite and firm conviction based on the entire record that a mistake has been made.' "[4]

---

[2]    *Fairbanks Fire Fighters Ass'n, Loc. 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) ("A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails.").

[3]    AS 25.24.150(c).

[4]    *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Hockema v.*
(continued...)

Based on our review of the record, we conclude that the superior court did not clearly err and therefore affirm its custody ruling.

### 1. Chichenoff's violation of the superior court's orders

The superior court stated that it was "trouble[d]" by Chichenoff's "blatant refusal" to follow its prior orders and expressed concern about Blondin's post-trial allegation that Daisy had been left with Chichenoff's boyfriend for several days in violation of the court's no-contact order.[5] At trial, Chichenoff admitted to violating court orders, including an order to not block phone conversations between Daisy and Blondin.

On appeal Chichenoff does not dispute the finding that she violated court orders but instead argues that she "has followed orders as close as possible for the very best interest of [Daisy]," particularly due to Blondin's "history of disparaging [Chichenoff] via text, email, and social media." She also asserts that Blondin has continuously disobeyed the superior court throughout the litigation.

Chichenoff's arguments are unavailing because it is the superior court's duty to decide what is in the child's best interests.[6] A parent who disagrees may seek reconsideration or modification but may not flout the court's orders thinking the parent knows best. Nor is a parent excused from following court orders when the other parent does not.

A parent's willingness to follow a court order imposed for the child's

---

[4]     (...continued)
*Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

[5]     After trial, Blondin moved for immediate modification of interim custody on the basis of this allegation. The superior court denied this motion but it ordered a custody investigator to interview Daisy separately from her parents. The record does not contain the results of this investigation.

[6]     *See* AS 25.24.150(c).

protection and well-being — even if the parent disagrees — is appropriate for the superior court to consider when evaluating each parent's "capability and desire" to meet the child's "physical, emotional, mental, . . . and social needs," as the court must under AS 25.24.150(c)(1) and (2). The superior court therefore did not clearly err in making this finding or abuse its discretion by placing weight on it.

### 2. Chichenoff's animosity toward Blondin

The superior court found that while "[b]oth parents love [Daisy]" and have the desire and capability to meet Daisy's needs, "their ability to do so is constrained by their hatred for each other." Chichenoff disagrees, arguing that she has "taken care of all of [Daisy's] medical, physical, emotional, mental, religious, and . . . social needs."

It is evident from the record that Chichenoff and Blondin have, as the superior court observed, "a toxic relationship." Their communications via email, text message, and social media are riddled with insults and provocations. Many of the communications also are about Daisy and the other party's fitness as a parent. The superior court found that, "in efforts to demonstrate their mutual hatred, they frequently use [Daisy] as a pawn." After reviewing these communications, we do not believe this finding is clearly erroneous.

The record also shows that Daisy has had significant psychological issues, including two hospitalizations due in part to reported suicidal ideation and homicidal ideation toward Chichenoff. The superior court believed that Daisy's "psychological issues are the result of the toxic relationship" between Chichenoff and Blondin — a finding Chichenoff fails to even address. Given the superior court's unchallenged finding that the parents' toxic relationship harmed Daisy, the superior court did not clearly err in finding that Chichenoff's hatred for Blondin affects her ability to meet Daisy's needs.

### 3. Domestic violence allegations by Chichenoff

In determining custody the superior court is to consider "any evidence of domestic violence . . . in the proposed custodial household or a history of violence between the parents."[7] At trial, the superior court heard evidence of domestic violence. Chichenoff testified that Blondin once broke her tooth and on another occasion choked her in front of Daisy. The superior court acknowledged this testimony but found there was insufficient evidence of domestic violence.

Chichenoff reiterates on appeal her testimony that Blondin abused her throughout their relationship. But it appears that the court did not find Chichenoff's testimony on this issue credible. Credibility determinations "based primarily on oral testimony" are the province of the trial court, and we "afford particular deference" to such findings because "the trial court is better suited to judge the credibility of witnesses and weigh conflicting evidence."[8] Although the superior court did note that Blondin's communications "[came] close to harassment of" Chichenoff and that there was "a history of verbal abuse" between the two parents, it stopped short of crediting Chichenoff's specific allegations of domestic violence. After reviewing the record and the testimony of both parties and the witnesses, we conclude the superior court did not clearly err in finding no domestic violence.

### 4. Chichenoff's unwillingness to foster a relationship between Blondin and Daisy

The superior court is instructed to consider "the willingness and ability of

---

[7]    AS 25.24.150(c)(7).

[8]    *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014); *see also Burns v. Burns*, 466 P.3d 352, 361 (Alaska 2020) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001))).

each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[9]  The court may not consider this factor, however, "if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child."[10]

In determining whether Chichenoff and Blondin were willing and able to facilitate and encourage a close and continuing relationship between Daisy and the other parent, the superior court found that Chichenoff "intentionally interfered" with Blondin's communications with Daisy and "used [her] as leverage."  Chichenoff appears to challenge this finding in three ways, arguing:  (1) it was clear error to find that Chichenoff interfered with Blondin's relationship with Daisy; (2) it was clear error to find that Chichenoff's interference was unjustified; and (3) considering this factor was an abuse of discretion due to Blondin's domestic violence.  None of these arguments is persuasive.

First, the superior court did not clearly err by finding that Chichenoff interfered with Blondin's relationship with Daisy.  Blondin testified that during the summer when Daisy was in Kodiak, Chichenoff refused to allow Blondin to have parenting time and that Chichenoff refused to allow contact unless he gave her money — despite the superior court's order granting Blondin that parenting time.  Blondin also testified that Chichenoff ignored his calls to Daisy, which Chichenoff does not refute.  This testimony supports the superior court's finding about Chichenoff's interference.

Second, the superior court did not clearly err by finding that Chichenoff's interference was unjustified. Chichenoff argues that she "interfered at certain times when

---

[9]     AS 25.24.150(c)(6).

[10]     *Id.*

it was needed," particularly when Daisy would get very upset after talking with Blondin. But the superior court found no merit in this justification. The court noted that it "watched a video of [Daisy's] out of control behavior" but saw no indication that such behavior was caused by a phone conversation with Blondin. It otherwise found no evidence that Daisy would get upset after talking with Blondin. The superior court therefore did not clearly err in finding Chichenoff's justification inadequate.

Chichenoff also argues that her unwillingness was justified because Blondin was similarly unwilling to foster Daisy's relationship with her. Both Chichenoff's mother and boyfriend testified that Blondin threatened to take Daisy away from Chichenoff. The superior court indeed found that Blondin's behavior was "very controlling and manipulating" toward Chichenoff, and that its "observations of [Chichenoff's] behavior . . . demonstrate that [Blondin] knows how to trigger an emotional, and at times irrational, reaction from [Chichenoff]." The superior court found that neither parent allows an open and loving relationship between Daisy and the other parent. But the statute excuses a parent's unwillingness to foster a relationship only for limited reasons related to domestic violence, not because the other parent fails to promote the child-parent relationship.[11]

Third, because we upheld the superior court's finding that no domestic violence occurred, the superior court did not abuse its discretion in considering Chichenoff's willingness and ability to foster a relationship between Blondin and Daisy.[12]

---

[11] *See* AS 25.24.150(c)(6).

[12] *See id.*

**C.** **We Largely Affirm The Superior Court's Property Division But Remand For Additional Findings On Certain Items.**

Chichenoff appeals the superior court's property division rulings on taxes, Daisy's Permanent Fund Dividend (PFD), the commercial fishing boat, and the taekwondo bill. When dividing marital property Alaska courts apply the law of equitable distribution,[13] which involves three steps.[14]

First, the superior court decides what specific property is available for distribution.[15] This step "may involve both legal and factual questions."[16] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[17] We review factual findings for clear error, which exists only when we are "left with a definite and firm conviction based on the entire record that a mistake has been made."[18] On the other hand, whether the superior court applied the correct legal rule is a question of law that we review de novo by using our independent judgment.[19]

---

[13]     *See Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018).

[14]     *See Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019).

[15]     *Id.*

[16]     *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[17]     *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) (quoting *Beals*, 303 P.3d at 459).

[18]     *Pasley*, 442 P.3d at 744 (quoting *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

[19]     *Grove*, 400 P.3d at 112.

Second, the superior court values the property.[20]  This step is a factual determination that we review for clear error.[21]

Third, the superior court divides the property equitably.[22]  We review this step for abuse of discretion and "will reverse only if the division [was] clearly unjust."[23]

### 1.    Taxes

The superior court ruled that Chichenoff and Blondin shall alternate claiming Daisy for tax purposes, with Chichenoff claiming Daisy in odd years and Blondin claiming her in even years "so long as he is current on his child support payments."  Chichenoff argues that this was error because federal law allows a parent to claim a child as a dependent for tax purposes only if the child has the same principal place of abode as the taxpayer for more than one-half of the year, and Daisy lives with Chichenoff for most of the year.

Generally, "[i]n an action for divorce . . . the court may not unconditionally grant to a noncustodial parent the right to claim a child as a dependent under federal income tax laws."[24]  A "noncustodial parent" is "the parent who has actual physical custody of the child for less time than the other parent."[25]  However, the superior court "may grant a noncustodial parent the right to claim a child as a dependent . . . for a [given] year if the noncustodial parent satisfies the requirements of federal law" and does

---

[20]     *Thompson*, 454 P.3d at 988.

[21]     *Pasley*, 442 P.3d at 744.

[22]     *Thompson*, 454 P.3d at 988.

[23]     *Id.* at 989 (alteration in original) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[24]     AS 25.24.152(a).

[25]     AS 25.24.152(b).

not have excessive child support arrears.[26]  Alaska Civil Rule 90.3(k) further provides that, consistent with AS 25.24.152 and federal law, the superior court may allocate the federal tax exemption for a child between the parties "as is just and proper and in the child's best interests."[27]

Federal tax law provides that a parent may claim a child as a dependent for income tax purposes if the child "has the same principal place of abode as the taxpayer for more than one-half of [the] taxable year."[28]  But this rule is subject to exceptions for divorced parents:

> [I]f . . . a child receives over one-half of the child's support during the calendar year from the child's parents . . . who are divorced . . . and . . . such [a] child is in custody of [one] or both of the child's parents for more than one-half of the calendar year, such child shall be treated as being the qualifying child or qualifying relative of the noncustodial parent for a calendar year . . . .[29]

Because Daisy receives all of her support from her divorced parents and is in the custody of both parents throughout the year, Daisy is a "qualifying child" for both Chichenoff and Blondin under federal law.  Therefore, the superior court did not err in allowing Blondin to claim Daisy for tax purposes every other year.

Chichenoff next argues that she should be able to claim Daisy every year because she "provides everything for [Daisy's] needs" and "has [her] full time."

---

[26]     AS 25.24.152(a).

[27]     *See also Nancy M. v. John M.*, 308 P.3d 1130, 1138 (Alaska 2013) (noting that, except in specified circumstances, AS 25.24.152 does not restrict superior court's discretion to grant noncustodial parent right to claim child as dependent under federal income laws); *Skinner v. Hagberg*, 183 P.3d 486, 492-93 (Alaska 2008).

[28]     26 U.S.C. § 152(c)(1)(B) (2018).

[29]     26 U.S.C. § 152(e)(1)(A)-(B).

Paraphrasing 26 U.S.C. § 152(e)(1)(A), Chichenoff argues that in order "to claim someone on their taxes they must pay more than half of her living expenses and live with them more than half of the year." But Blondin pays some child support and will most likely have more significant expenses during the part of the year when Daisy lives with him. Therefore, Chichenoff's argument that she has Daisy "full time" and "provides everything" for Daisy's needs is not sufficient to prove that the superior court abused its discretion to allow the parents to alternate years for which they can claim Daisy.[30]

### 2. Permanent Fund Dividend

The superior court ruled that Chichenoff shall apply for Daisy's PFD and place the money into an account for Daisy. It ordered that Chichenoff provide Blondin all the information regarding the account, including the monthly statements, and that the money remain in the account unless both parties agree to some other course of action. It also ordered that if Chichenoff determines that some of the funds should be used for Daisy but Blondin disagrees, Chichenoff can address the issue with the court. If the court finds Blondin's withholding of funds unreasonable, Chichenoff may be awarded attorney's fees. Chichenoff argues that because she was awarded sole legal custody (albeit "conditional"), she should have unfettered control over Daisy's PFD.

Equitable distribution of a child's PFD is not governed by statute and is therefore fully within the superior court's discretion.[31] A parent may claim a PFD on

---

[30]     *See Skinner*, 183 P.3d at 492-93 (finding no abuse of discretion in conditionally allocating federal tax deduction to noncustodial parent).

[31]     *See Hayes v. Hayes*, 922 P.2d 896, 901 (Alaska 1996) (noting "the legislature's silence as to what parents must or should do with PFDs received on behalf of unemancipated minors").

behalf of an unemancipated minor.[32]  We have largely deferred to the superior court's discretion regarding the treatment of a child's PFD so long as it was grounded in reason.[33]  "[C]hild custody and support orders can include provisions assigning responsibility for managing a child's PFD and limiting acceptable uses of the money."[34] " 'P]arties are expected to comply' with such provisions, and a court can order a parent who misuses PFD funds to repay those funds."[35]  The superior court's order permits spending Daisy's PFD only if agreed to by both parents but places a check on Blondin's ability to withhold his agreement.  This approach is not an abuse of discretion.

### 3.    Taekwondo bill

The superior court concluded that the debt for taekwondo lessons was marital debt.  It found that Blondin's mother had been paying half of the bill but had recently stopped, resulting in Daisy being unable to continue her lessons.  The court ordered that Blondin pay half of the outstanding debt within 30 days of its order.  Chichenoff contests this ruling, arguing that the entire debt should be assigned to Blondin.

---

[32]     *See* AS 43.23.005(c); *see also L.A.M. v. State*, 547 P.2d 827, 832 n.13 (Alaska 1976) (enumerating among those "parental rights" protected by constitution "right to control and manage" minor child's earnings and property).

[33]     *See Martin v. Martin*, 303 P.3d 421, 428-29 (Alaska 2013) (determining no error in superior court's treatment of children's PFDs); *Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 477 (Alaska 2012) (maintaining "it was for the superior court to decide which parent would better serve the children's best interests in being responsible for PFD applications").

[34]     *Tagaban v. Tagaban*, No. S-16589, 2018 WL 4042775, at *4 (Alaska Aug. 22, 2018) (citing *Wells v. Barile*, 358 P.3d 583, 585 (Alaska 2015) *Martin*, 303 P.3d at 423; *Tesenier v. Spicer*, 74 P.3d 910, 917 (Alaska 2003))).

[35]     *Id*. (alterations in original) (quoting *Wells*, 358 P.3d at 590).

"Debt incurred during marriage is presumptively marital; the party claiming otherwise must show that the parties intended it to be separate."[36] However, debts incurred post-separation are non-marital, unless the superior court makes a finding that the couple continued to function as a single economic unit.[37] The taekwondo debt was incurred after the parties separated, and the court made no finding that they continued to function as a single economic unit.[38] Therefore the debt is non-marital.

Because the debt is non-marital, the arrangement the parties made regarding the bill is a question of contract. "Where the existence of an oral contract and the terms thereof are contested and the evidence is conflicting, it is for the trier of fact to determine whether the contract did in fact exist and, if so, the terms of such contract."[39]

Here the terms of the taekwondo agreement appear disputed. Chichenoff testified at trial that Blondin agreed to pay the entire bill. Blondin conceded that he may have agreed to that at one point, but he did not agree to pay the entire bill going forward every month. He testified that he eventually offered to pay for half. Chichenoff claims that it was actually Blondin's mother who offered to have Blondin pay for half of the classes, which Chichenoff rejected, but Blondin testified that he told his mother to communicate this offer to Chichenoff via text message. Blondin's mother testified that

---

[36]    *Richter v. Richter*, 330 P.3d 934, 938 (Alaska 2014); *see also Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 495 (Alaska 2017) (finding that superior court clearly erred by finding mother's student loans were not marital debt); *Veselsky v. Veselsky*, 113 P.3d 629, 636 (Alaska 2005) (finding that mother's student loan was properly included as marital debt in division of property).

[37]    *See Dodson v. Dodson*, 955 P.2d 902, 910 (Alaska 1998).

[38]    *See id*. (holding that one party's financial dependency on other is not enough to indicate continuance of marital economic unity).

[39]    *Curran v. Hastreiter*, 579 P.2d 524, 526 (Alaska 1978).

she paid for the equipment and first month but did not intend to foot the entire bill going forward every month.

In light of this disputed evidence, we remand to the superior court to determine to whom the debt belongs.

### 4. Fishing boat

The superior court ruled that the fishing boat was not marital property after finding credible the testimony of Blondin's mother that she and her husband, not Blondin, owned the boat. Chichenoff challenges this ruling on appeal. The superior court's ruling and Chichenoff's arguments present two distinct questions: first, whether the boat was marital property subject to division; and second, if not, whether the couple nevertheless acquired a marital equity interest in the boat by virtue of the payments made by Blondin to his parents while using the boat. We review factual findings such as these "for clear error, which exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[40]

First, the superior court found that the commercial fishing boat was not marital property because Blondin's parents had no intent to make it a gift to the marriage. Chichenoff disagrees, arguing that the boat was a marital asset because "it was [the couple's] only source of income for [their] family." She claims that Blondin's parents helped Blondin "build the boat from the ground up" by lending the couple the money to build the boat. She also claims that the boat was in Blondin's name in 2015 but was changed to Blondin's father's name after Chichenoff filed for divorce.

The superior court did not clearly err in finding that the boat was not marital property. As a general rule, "property is separate property if it was acquired by a spouse

---

[40] *Pasley v. Pasley*, 442 P.3d 739, 744 (Alaska 2019) (quoting *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

before the marriage and property is marital property if it was acquired by a spouse during the marriage."[41] But the testimony credited by the superior court suggested that Blondin did not acquire the boat at all. Blondin's mother testified that she and her husband bought the boat off the beach and rebuilt it together. She also testified that they had paid for everything and that Blondin did not own the boat. Although Chichenoff presented evidence that Blondin was listed as the owner of the boat in 2015, the superior court found Blondin's mother's testimony that the boat was owned by her and her husband credible. We see no reason to overturn this credibility finding.[42]

Second, even though the boat is not marital property subject to division, Chichenoff could demonstrate there is a marital interest in the boat by showing that Blondin used marital funds to acquire equity in the boat.[43] After the superior court made its findings in this case, we published our decision in *Aubert v. Wilson*, holding that "the use of marital funds to pay down the mortgage on separate property creates a marital interest in that property."[44] And because "contributions toward reducing the principal balance of debt are . . . contributions to acquisition of the property," the use of marital funds to acquire equity ownership in property (such as a boat) would result in both

---

[41]     *Aubert v. Wilson*, 483 P.3d 179, 186 (Alaska 2021) (quoting *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018)).

[42]     The superior court also found that Blondin had no intent to make the boat a marital asset. Because the court credited Blondin's mother's testimony that she and Blondin's father bought the boat for Blondin to use, but ultimately did not give it to him, Blondin's intent is immaterial.

[43]     *Aubert*, 483 P.3d at 187.

[44]     *Id.* at 187 (quoting *Kessler*, 411 P.3d at 622).

parties in the marriage taking an ownership stake in that property.[45]   Therefore, if Blondin was using his parents as an intermediary to acquire equity in the boat, then that equity is the couple's marital property subject to division.   But if Blondin was paying only for use of the boat and acquired no equity in it, then there is no marital equity interest subject to division.   There is a tension in the superior court's decision that must be resolved by additional findings on remand.

On the one hand, the superior court found credible the testimony of Blondin's mother, who maintained that Blondin did not acquire any ownership interest despite using marital funds to cover payment of the loan.   Blondin's mother testified on direct examination that "he . . . never acquire[d]" any such ownership in the boat, but instead was the skipper of the boat and made the loan payment for the privilege of using the boat:

> BLONDIN'S COUNSEL:   Okay.   So what was Brad's relationship to the boat?
>
> . . . .
>
> BLONDIN'S MOTHER:   Permit holder and skipper.
>
> BLONDIN'S COUNSEL:   And did he pay for the privilege of doing that[?]
>
> . . . .
>
> BLONDIN'S MOTHER:   [W]hat we asked of him to pay every year to us was at least the amount of the loan payment that year.   So whether he made more or less, we said you have to at least give us enough to make the payment to the bank to be able to use this boat.
>
> BLONDIN'S COUNSEL:  Fair enough.   And at no time did he acquire an ownership interest in that boat, is that —

---

[45]   *Id.* (alteration in original) (quoting 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:26, at 600 (4th ed. 2019)).

BLONDIN'S MOTHER:  No.

BLONDIN'S COUNSEL:  Is that fair, he did not acquire —

BLONDIN'S MOTHER:  He did never acquire.

Later in the hearing, Blondin also testified that he never had any ownership in the boat, while confirming that "[his parents] owned [the boat] and [he was] the captain and got a percentage."  He further agreed that he pays for "the upkeep and maintenance and repairs," including by purchasing a generator for the boat that cost $23,000; however, he testified that he had nothing to do with the financing of the boat.

On the other hand, the superior court expressly found that Blondin is "paying off the loan."  This finding suggests acquisition of an equity interest, and there is some evidence to support that implication.  For instance, Blondin sent a text message to Chichenoff implying that the value in the boat would go to Chichenoff and Daisy if he died — which in turn suggests that he thought he was acquiring some kind of equity in the boat.

Because the existing findings are insufficient to resolve whether Blondin (and therefore Chichenoff) acquired a marital equity interest in the boat using marital funds to cover the loan, we remand the matter to the superior court to make appropriate findings in light of our holding in *Aubert*.

D.    **We Remand The Superior Court's Order Regarding Travel Expenses For Further Clarification.**

The superior court ordered the parties to share the cost of Daisy's travel for visitation, but it is not entirely clear who must pay for what: "During the Christmas, Spring Break and summer exchanges the parent receiving the child shall pay for her travel.  For instance, [Blondin] shall pay for the weekend traveling time in January and February."  Although the superior court acknowledged that Chichenoff had limited income, it reasoned that "knowing the schedule . . . far in advance [would] help [her]

plan [Daisy's] travel." Chichenoff argues that Blondin should have been ordered to pay for all travel expenses for a variety of reasons.

Allocation for travel expenses is reviewed for abuse of discretion.[46] Alaska Civil Rule 90.3(g) provides that "[a]fter determining an award of child support under this rule, the court shall allocate reasonable travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute."

We cannot review the order for abuse of discretion because it is not entirely clear what the superior court meant. It ordered that "the parent *receiving* [Daisy] shall pay for her travel." (Emphasis added.) As an example, the superior court indicated that Blondin would pay for Daisy's travel expenses over the Martin Luther King Day weekend and from February 13 to 17. But based on this example, it is not entirely clear to us which parent is the "receiving" parent for the rest of the year. It is possible that normally the party to whom Daisy is traveling shall pay for the cost of that travel (e.g., when Daisy goes to Kodiak, Blondin pays for her ticket, and when Daisy returns to Anchorage, Chichenoff pays for her ticket), but Blondin pays for the entire cost of the trips in January and February. Because we do not know whether this is what the superior court intended, we remand the issue for clarification.

## IV. CONCLUSION

We AFFIRM the superior court's custody and visitation award as modified by its February 6, 2020 order. We also largely AFFIRM the superior court's property division, but REMAND for additional findings regarding the taekwondo debt, boat, and travel expenses.

---

[46] *See Ronny M. v. Nannette H.*, 303 P.3d 392, 400 (Alaska 2013).